# Bochetto & Lentz P.C. v. Whitman Council Inc.

*George Bochetto* and *Tricia Desmarias,* for plaintiff.

*Joseph F. Mikolaitis,* for defendant.

NEW, *J.,* March 18, 2010—Plaintiff law firm Bochetto & Lentz P.C. filed this action against defendant Whitman Council Inc. Whitman Council did not respond to the complaint, and plaintiff obtained a default judgment against the council on July 8, 2009, in the amount of $122,789.17.

In December, 2009, plaintiff caused writs of execution to be served on numerous banks, including TD Bank, N.A. On January 14, 2010, TD Bank filed answers to interrogatories admitting that Whitman Council had three accounts at TD Bank containing total funds of $14,542.21. That same day, plaintiff entered judgment by admission against garnishee TD Bank in the amount of $14,542.21. On January 27, 2010, TD Bank transferred all the funds from the council's bank accounts to plaintiff.

On February 1, 2010, the City of Philadelphia filed an emergency motion to stay proceedings and a petition to intervene, stay and set aside writ of execution. In its motions, the city represented that part of the funds held in Whitman Council's accounts at TD Bank were federal grant monies that are immune from levy. The court initially granted the emergency motion to stay, but when it became clear the funds had already been transferred to plaintiff, the court lifted the stay.

On March 17, 2010, the court held a hearing on the petition to intervene. At the hearing, city witnesses testified the city receives community development block grant funds from the United States Department of Hous-

ing and Urban Development. The city enters into yearly contracts with neighborhood advisory committees, such as Whitman Council, to offer certain community services in exchange for federal block grant funds.

Throughout 2009 and 2010, Whitman Council submitted monthly invoices and bank statements to the city detailing the eligible expenses it had incurred in the previous month. The city approved qualified expenses for reimbursement and forwarded block grant funds to Whitman Council to reimburse such expenses. Whitman Council was required to deposit the federal funds it received into a separate account and not to commingle them with any other funds. Whitman Council kept the federal monies it received in TD Bank account number *********, which was one of the accounts which plaintiff garnished. In January 2010, the account contained $7,931.39, which TD Bank transferred to plaintiff. The city seeks the return of those funds to Whitman Council's account.

The city's request is untimely. Unfortunately, Whitman Council failed to notify the city of the July, 2009 default judgment and of the levy against the council's accounts until mid-January when TD Bank responded to the garnishee interrogatories. At that time, the city, Whitman Council, or TD Bank could have made a claim for exemption or immunity with respect to the federal funds in the council's account.[1] If the claim had been made then, execution would have been stayed, and the court would have had a chance to rule upon the matter before judgment was entered against TD Bank.[2] No one made

---

1. See Pa.R.C.P. 3121, 3123.1, 3142.
2. See Pa.R.C.P. 3121, 3123.1.

a claim before judgment was entered and the funds were transferred to plaintiff. Now, it is too late.[3]

Even if the city timely raised the issue of immunity of federal funds, the evidence does not establish that the $7,931.39 transferred from TD Bank to plaintiff was comprised of federal funds. The city entered several of Whitman Council's TD Bank account statements into evidence. The last bank statement the city submitted was for the period ending October 31, 2009, and it reflected a balance of $6,888.92.[4] There was no evidence of what federal funds, if any, were added to or subtracted from the account in the subsequent three months. Therefore, the court cannot conclude that the $7,931.39 transferred to plaintiff at the end of January 2010, was comprised of federal funds.

Even if the entire $7,931.39 constituted federal block grant funds, the funds may not be exempt from execution. The funds paid by the city to Whitman Council were not grant monies given in trust for work to be done in the future, which funds would retain their federal exempt status until used for the purpose for which they were given.[5] Instead, the funds the city gave to the council

---

3. See *Kalman v. Muzikar,* 304 Pa. Super. 503 , 505, 450 A.2d 1025, 1026 (1982) ("a judgment that has been satisfied no longer exists and cannot be attacked either by a motion to strike or by a motion to open.").

4. Exhibit C-9.

5. See *Palmiter v. Action Inc.,* 733 F.2d 1244, 1247 (7th Cir.1984) ("It is well settled that federal monies are not subject to garnishment proceedings until they have been paid out for the purposes for which they were appropriated.").

According to the city's witness, the last time the city advanced funds to the council was in October 2008 and those funds were expended by the council for program purposes by March 2009. All subsequent payments from the city to the council were reimbursements.

were reimbursements for program costs that the council had already paid by check.[6] Once the reimbursement monies were transferred to the council, they ceased to be federal funds and became Whitman Council's funds.[7] The council's funds are subject to garnishment by the council's creditors, including plaintiff.

## CONCLUSION

For all the foregoing reasons, the city's petition to intervene, stay and set aside writ of execution is denied.

## ORDER

And now, March 18, 2010, upon consideration of the City of Philadelphia's petition to intervene, stay and set aside writ of execution, the response thereto and all other matters of record, and after a hearing on March 17, 2010, and in accord with the opinion issued simultaneously, it is ordered that the petition is denied.

---

6. See exhibits C-7—C-10 (Whitman Council's cash disbursement journal entries from 8/1/09—11/30/09).

7. Cf. *Palmiter,* 733 F.2d at 1249 (court did not allow creditor to attach federal funds paid in reimbursement for initial indirect grant expenditures because the evidence [was] clear that [the judgment debtor] 'borrowed' other federal grant funds to make the expenditures, so that the reimbursement funds [had to] be repaid to those accounts and used for those grant purposes.").